**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Michele Brambila,<br>Plaintiff,<br>v.<br>Commissioner of Social Security Administration,<br>Defendant. | No. CV-25-08173-PCT-JAT<br>**ORDER** |

Before the Court is Claimant Michele Brambila's appeal of the Commissioner of the Social Security Administration's ("SSA," or "the Commissioner) denial of social security benefits. (Doc. 14). The appeal is fully briefed (Docs. 14, 15, 16), and the Court now rules. The parties agree that a remand is warranted, but they disagree as to whether more agency proceedings are necessary. Because the errors in the denial expose the need for further factfinding, the Court finds that additional development is required on remand.

## I. BACKGROUND

Ms. Brambila applied for both Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) in October 2020, alleging a disability onset date of December 18, 2018. (Doc. 14 at 2). She was last insured for benefits on September 30, 2020. (*Id.*). On two occasions, the SSA Appeals Council remanded the matter for another hearing. (Doc. 7-4 at 157; Administrative Record ("AR") at 255, 260).[1] An Administrative Law Judge ("ALJ") then denied Ms. Brambila's claim for benefits in the decision that the

[1] The Court collectively refers to the 10 continuously paginated parts found in Doc. 7 as the AR.

Court reviews here. (AR at 17-32).

Before she could receive SSA benefits, Ms. Brambila needed to show that she is disabled. *See* 42 U.S.C. §§ 423(a)(1)(E), 1381a. To be considered under a disability, she must be unable to engage in "substantial gainful activity" due to a medically determinable physical or mental impairment. *Id*. § 423(d)(1). This impairment must be severe enough to stop her from engaging in any substantial gainful work, including any of her previous work, within the national economy. *Id*. § 423(d)(2). The ALJ consulted the prescribed five-step sequential process created by the SSA when deciding whether Ms. Brambila was disabled under this standard. (AR at 18-20); *see* 20 C.F.R. § 404.1520(a)(1).

Step One of the regulatory test determines whether the claimant is engaging in any substantial gainful activity. *Id*. § 404.1520(a)(4)(ii). To pass this step of the analysis, one cannot perform "significant physical or mental activities" that are usually completed "for pay or profit." 20 C.F.R. § 416.972(a)–(b). Here, the ALJ confirmed that Ms. Brambila had not participated in substantial gainful activity since her alleged onset date. (AR at 20).

Step Two considers if the claimant has a severe "medically determinable physical or mental impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). To continue past this step, the given impairment must "significantly limit" Ms. Brambila's "physical or mental ability to do basic work activities." *Id*. § 404.1520(c). The ALJ here found that several of Ms. Brambila's medical conditions qualified as severe physical or mental impairments.[2] (AR at 20-23).

Step Three asks whether the claimant's impairments match an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). Absent a match, an ALJ examines the claimant's ability to perform certain physical and mental work despite impairment. *Id*. §§ 404.1545(a)(1), 404.1545 (e). That ability is often referred to as a claimant's "residual functional capacity" ("RFC"). This examination is based on the record and the entirety of the claimant's impairments (including not severe impairments)

[2] The ALJ decided that the following conditions satisfied Step Two's threshold: cervical spondylosis, lumbar spondylosis status post fusion, left shoulder osteoarthritis, migraine headaches, and fibromyalgia. (AR at 20).

that can "affect what [the claimant] can do in a work setting." *Id*. §§ 404.1545(a)(1)–(2).

The ALJ here determined that Ms. Brambila did not have an impairment matched in the Appendix and that she had the requisite RFC to perform light work, albeit with some limitations. (AR at 23-30). In making that finding, he reviewed the record and addressed certain pieces of evidence, like statements from medical professionals and Ms. Brambila's own subjective symptom testimony. (*Id*.).

Step Four identifies whether the claimant's RFC allows for the physical and mental demands of work done "within the past five years that was substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). The ALJ in this case found that Ms. Brambila had no past relevant work and therefore continued to the final step. (AR at 30).

Step Five considers whether the claimant has the capacity to perform other work given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(v). If Ms. Brambila can adjust to other work, she must not be found disabled; if not, she must be found the opposite. *Id*. The ALJ here concluded that, given the relevant age, education, and work experience, Ms. Brambila could perform a number of jobs in the national economy and therefore decided against granting SSDI or SSI benefits. (AR at 30-31).

## II. LEGAL STANDARD

This Court may set aside the ALJ's decision only if it is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). If at least "more than scintilla but less than a preponderance" of relevant evidence reasonably supports the ALJ's decision, an affirmance is proper. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). The Court consults the entirety of the record when applying this standard. *Id.* (citing *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for drawing logical inferences from the medical record, resolving conflicts in medical testimony, determining credibility, and resolving any ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)

(citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). The ALJ's decision will accordingly be upheld if the relevant evidence subjects it "to more than one rational interpretation." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).

## III. ANALYSIS

According to both Ms. Brambila and the Commissioner, the ALJ's decision lacked any discussion of a January 2021 medical opinion from Dr. Laura Wade. (Docs. 14 at 19-21; 15 at 4). Despite this concession, Ms. Brambila also argues that the ALJ improperly discounted her subjective symptom testimony, an October 2021 opinion from Dr. Wade, and a neurophysiological evaluation from Dr. Cynthia Funes. (Doc. 14 at 16-19, 21-24, 25-27). She finally argues that these errors show that a remand for a calculation of benefits is warranted. (*Id*. at 27).

### A. The January 2021 Migraine Opinion

Dr. Wade, Ms. Brambila's physician, wrote a statement in January 2021 that opined on perceived work-related limitations resulting from Ms. Brambila's migraine headaches. (AR at 872-73). It explained that Ms. Brambila required a dark, quiet room due to her symptoms, and that her frequent headaches affect her concentration, memory, and ability to work. (*Id*. at 873). Although the ALJ discussed another opinion from Dr. Wade, (*id*. at 28), he did not include any discussion of this testimony in his decision.

When crafting a decision, an ALJ is obligated to articulate the persuasiveness of *all* medical opinions in the record. 20 C.F.R. §§ 404.1520c, 416.920c. Because he failed to consider the opinion's persuasiveness under SSA's test, *see* 20 C.F.R. § 404.1520c(c), the Court finds that the ALJ erred by rejecting it. *See Garrison*, 759 F.3d at 1012-13; *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects a medical opinion when he ignores it). Because an ALJ could reasonably come to a different decision after considering Dr. Wade's January 2021 opinion, a remand is required. *See, e.g.*, *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

**B. The October 2021 Physical Limitations Opinion**

Dr. Wade also authored a statement in October 2021 about physical work limits. (AR at 1068-71). That opinion said that Ms. Brambila could sit for three hours in a workday and stand or walk for three hours in a workday. (*Id*. at 1068). Dr. Wade thus recommended regular position changes. (*Id*.). She concluded that Ms. Brambila's pain had worsened her ability to function in a "severe" manner and required a variety of limitations. (*Id*. at 1070).

The ALJ determined that this October 2021 opinion was unpersuasive. (*Id.* at 28). He began by noting that Dr. Wade's prior treatment records undermined her statement by showing that Ms. Brambila was in no acute distress and was able to move her extremities with no neurological abnormality. (*Id*.). The ALJ then contrasted the opinion with medical evidence showing normal physical abilities. (*Id*.).

The persuasiveness of a medical statement is determined in consultation with four factors: support from the record, consistency with the record, the relationship between the claimant and the professional, and the professional's specialties. 20 C.F.R. § 404.1520c(c). Of these factors, the first two carry the greatest weight. *Wood v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). The ALJ's explanation of the persuasiveness of Dr. Wade's opinions must be supported by substantial evidence and articulate how he considered the supportability and consistency factors. *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(b)). Ms. Brambila disagrees with the ALJ's application of the factors, arguing that there was "ample evidence" demonstrating limited physical ability. (Doc. 14 at 23).

To undercut the ALJ's supportability analysis, Ms. Brambila points to a notation from Dr. Wade that noted tender spine and paraspinal muscles. (*Id*. (citing AR at 1129)); *see* 20 C.F.R. § 404.1520c(c)(1) (emphasizing that an opinion will be more persuasive if it is supported by the professional's use of medical evidence or explanations). But the fact that Dr. Wade provided both supportive and unsupportive evidence in her examinations is insufficient to discredit the ALJ's application of the supportability factor. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that an ALJ may discount a doctor's opinions that are unsupported by the doctor's own clinical findings).

Absent a rule requiring total internal inconsistency, the ALJ was not incorrect to rely on Dr. Wade's records that were at least partially unsupported by her opinion. *See, e.g.*, *Rogers v. Comm'r of Soc. Sec. Admin*, No. CV-20-00532-TUC-SHR (MSA), 2022 WL 464911, at *3 (D. Ariz. Jan. 11, 2022), *report and recommendation adopted*, 2022 WL 458517. And Ms. Brambila cannot prevail here by offering a different interpretation of Dr. Wade's records. *See Thomas*, 278 F.3d at 954. Thus, while the record *could* tell a different story, the ALJ's adverse supportability decision was based on substantial evidence.

Ms. Brambila next disputes the ALJ's consistency analysis by again pointing to the past notation from Dr. Wade, in addition to other medical professionals' findings that she had pain, a limited range of motion, and trouble moving. (Doc. 14 at 23 (citing AR at 808, 939, 1228, 1129)); 20 C.F.R. § 404.1520c(c)(2) (explaining that an opinion will be more persuasive if it is consistent with other evidence of record). She also cites to various cases rightly pointing out that ALJ cannot manufacture the appearance of normal findings by selectively citing the record. (Doc. 14 at 23-24).

The problem with this argument is that the ALJ considered a succession of medical evidence reflecting that Ms. Brambila had normal gait and ability to stoop, balance, and walk without any difficulty (AR at 28 (citing AR at 926, 976, 1222, 1411)). Because his interpretation of the evidence logically conflicts with Dr. Wade's statement opining against normal physical functionality, the Court finds no error with the ALJ's adverse consistency determination. *See Arreola v. Comm'r of Soc. Sec. Admin*., No. CV-24-01351-SMB-DMF, 2024 WL 5672285, at *5 (D. Ariz. Dec. 19, 2024), *report and recommendation adopted*, 2025 WL 1235588. That determination was likewise based on the substantial evidence in the record that the ALJ relied on when forming his conclusion.

The cases to which Ms. Brambila cites are inapposite to her circumstances. To start, in *LaRoque v. O'Malley*, No. 22-35975, 2024 WL 3355363, at *2 (9th Cir. July 10, 2024), an ALJ ignored large parts of a doctor's treatment notes listing symptoms when claiming that the doctor's notes did not support a disability finding. The ALJ here did no such thing; rather, he identified reports from different medical providers reporting that Ms. Brambila

had regular functionality. (AR at 28).

The district court caselaw Ms. Brambila cites to is likewise unhelpful. In *Holt v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00812-PHX-JJT, 2023 WL 6173211, at *4 (D. Ariz. Sept. 22, 2023), an ALJ cited one instance of an improvement of symptoms when the entire record was replete with treatment notes suggesting constant suffering. Here, the ALJ cited a collection of medical evidence suggesting normal physical findings. The fact that Ms. Brambila presents a competing slate of evidence does not mean that the ALJ failed to consider the record as a whole or produce a plausible view of the evidence. And in *Tennison v. O'Malley*, No. CV-22-00521-TUC-RCC (LCK), 2024 WL 713907, at 4-5 (D. Ariz. Feb. 2, 2024), *report and recommendation adopted*, 2024 WL 707461, an ALJ cited part of the treatment records that supported the opinion and two unexplained, duplicate citations to a different record. The ALJ here, meanwhile, cited different providers' opinions and then explained that the recorded normal physical findings contradicted Dr. Wade's opinion.

In the end, the ALJ's treatment of Dr. Wade's October 2021 opinion followed the applicable regulation and was supported by substantial evidence. He explained that the opinion was internally unsupported and inconsistent with medical records showing normal ability. Even if Ms. Brambila or this Court would construe the evidence differently, the ALJ's view was plausible, sufficiently explained, and not legally erroneous. *See Batson*, 359 F.3d at 1198.

**C. The April 2022 Neurological Evaluation**

Turning away from Dr. Wade, Ms. Brambila next argues that the ALJ failed to take a neurological evaluation into account. (Doc. 14 at 25-26 (citing AR at 1375-84)). That evaluation, completed by Dr. Funes, reported that Ms. Brambila's cognitive defects suggest "reduced attention, information processing speed and executive dysfunction impacting her problem-solving abilities, learning and memory." (AR at 1379). The Commissioner, on the other hand, contends that the ALJ properly considered that evaluation. (Doc. 15 at 14-15).

Given the Court's disposition regarding the January 2021 medical opinion by Dr. Wade, this disagreement need not be discussed further. Because both pieces of medical

evidence concern Ms. Brambila's mental abilities and symptoms, the manner in which the ALJ considers one medical evaluation might affect the manner he considers others. *See Hawthorne v. Comm'r of Soc. Sec.*, Case No. 26-cv-00177-RS, 2026 WL 2520247, at *2 (N.D. Cal. Aug. 26, 2026). Determining how these and other pieces of evidence interact, however, is a job for the factfinder, not this Court. *See Delgadillo v. Kijakazi*, No. 20-56211, 2022 WL 301548, at *1 (9th Cir. 2022).

**D. Subjective Symptom Testimony**

Ms. Brambila lastly argues that the ALJ also failed to adequately consider symptom testimony. (Doc. 14 at 16-19). To reject a claimant's testimony about the severity of her reported symptoms, an ALJ must offer "specific, clear, and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). Here, the ALJ determined that Ms. Brambila's reports of the intensity, persistence, and limiting effects of her varied disabilities were "not entirely consistent" with the record. (AR at 25).

To come to this conclusion, the ALJ relied on two prior SSA decisions that had also discussed Ms. Brambila's subjective symptom testimony. (*Id*. (citing AR at 238-47, 263-78)). He affirmed that he had considered the medical history examined by those decisions, saying that "the summary of the medical evidence of record from [the SSA decisions] are incorporated herein by reference." (*Id*.). From there, the ALJ examined testimony that had been added to the record since the time of the last SSA decision. (*Id*. at 25-26).

General adverse findings are insufficient; the ALJ must identify which testimony is not credible and which evidence undermines the reported symptoms. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). Although the ALJ explained the reasons why the later subjective symptom testimony was rejected, *see* (AR at 26), there is no such discussion on any of the statements Ms. Brambila made before the date of the latest SSA decision. That fixation on current reports and not the entire record does not satisfy the specific, clear, and convincing standard needed to discredit the symptom testimony. *See Ghanim*, 763, F.3d at 1163; *Lingenfelter*, 504 F.3d at 1036.

The Commissioner responds by pointing out that ALJs may incorporate the work of other ALJs into their decisions, including the reasoning used to reject symptom testimony. (Doc. 15 at 10-13 (citing *Brown v. Colvin*, No. CASE NO. C16-0376-RSL-MAT, 2016 WL 7839352, at *3-4 (W.D. Was. Dec. 28, 2016), *report and recommendation accepted*, 2017 WL 218790. But the ALJ here did not do so. In fact, he wrote that only the *summaries* of Ms. Brambila's testimony were incorporated into the decision by reference, abandoning the *reasoning* of the prior decisions. *See* AR at 25). The decision is therefore left with a summary of evidence and the reasoning required to discard only the more recent of Ms. Brambila's symptom testimony.

The ALJ's disengagement with that older evidence is erroneous. *See, e.g.*, *Dunford v. Comm'r of Soc. Sec. Admin.*, No. CV-23-00855-PHX-JJT, 2024 WL 3886715, at *4 (Aug. 21, 2024) ("A recitation of medical evidence is insufficient reasoning to discount symptom testimony."). The Commissioner argues that the ALJ's discussion of newer evidence could discredit past testimony, (Doc. 15 and 12), but the Court is not in a position to make the determination that the ALJ intended to rebut the subjective symptom testimony through only that evidence, *see Garrison*, 759 F.3d at 1010 (holding that courts "may not affirm the ALJ on a ground upon which [he] did not rely"). Indeed, it is unclear what role, if any, the incorporated evidence played in the analysis. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (holding that courts "cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions").

Additional development is accordingly needed to explicitly address the testimony incorporated into the analysis or to explicitly adopt the reasoning of the past ALJ decisions; after all, the record raises questions about whether these subjective statements should be considered true, especially given the previous ALJs' discounting of the past testimony in their previous decisions. *See Leon v. Berryhill*, 880 F.3d 1041, 1048 (9th Cir. 2017)

**E. Remedy**

An "automatic award of benefits . . . is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon*, 880 F.3d at 1044; *Treichler*, 775 F.3d at 1101

n.5. If any outstanding issues remain or if further proceedings would be useful, the ordinary remand rule prevails. *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023). And in all cases, this Court has discretion not to award benefits when the record creates serious doubt as to whether the claimant is disabled. *Leon*, 880 F.3d at 1048.

Here, the Court finds that additional development will be beneficial since the ALJ's decision presents certain questions in light of this analysis. Most notably, there seems to be a disagreement between the medical opinions of Dr. Funes and Dr. Wade, who believe that Ms. Brambila's mental abilities are severely limited, and a Dr. Bahri, who opined that Ms. Brambila did not "present with cognitive challenges" and could initiate and perform tasks consistently, ignore distractions, and work full days. (AR at 29 (citing AR at 1403-07). Given this conflict, and the need for additional discussion of subjective symptom testimony regardless of the conflict, an award of benefits is inappropriate at this time. *Treichler*, 775 F.3d at 1103 (considering "whether the record as a whole is free from conflicts, ambiguities, or gaps"); *Garrison*, 759 F.3d at 1021.

## IV. CONCLUSION

"The touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). Here, while there is no clear existence of a disability, there are various lapses of analysis evident from the ALJ's decision. Further discussion of Dr. Wade's opinion, Dr. Funes's opinion, and Ms. Brambila's testimony is therefore desirable before either the Commissioner or this Court may reasonably discern that social security benefits should be granted.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is reversed and remanded for the further proceedings.

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 29th day of September, 2026.

James A. Teilborg
Senior United States District Judge